IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LARRY JAMES ORTIZ, #A0053511, | ) ) ) | CIV. NO. 16-00259 SOM/KSC |
| Petitioner, | ) ) | ORDER DISMISSING AMENDED PETITION AS TIME-BARRED |
| vs. | ) ) ) | AND DENYING CERTIFICATE OF APPEALABILITY |
| JOSEPH TAYLOR, | ) ) | |
| Respondent. | ) ) | |
| _____ | ) | |

## ORDER DISMISSING AMENDED PETITION AS TIME-BARRED AND DENYING CERTIFICATE OF APPEALABILITY

Before the court is pro se petitioner Larry James Ortiz's Amended Petition seeking relief under 28 U.S.C. § 2254. ECF No. 15. Ortiz challenges the judgment of conviction and sentence imposed by the Circuit Court of the First Circuit, State of Hawaii ("circuit court") in *State v. Ortiz*, Cr. No. 88-0459 (Haw. Cir. Ct. 1988).

Respondent argues that Ortiz's claims are time-barred pursuant to 28 U.S.C. § 2244(d). Ortiz asserts that he is entitled to statutory or equitable tolling of the statute of limitation.

After careful consideration of the entire record, the court DISMISSES the Petition with prejudice as

untimely.  Any request for a certificate of appealability ("COA") is DENIED.

## I.  **BACKGROUND**

### A.  **Procedural History**

On May 18, 2016, Ortiz filed his original Petition by placing it in the Saguaro Correctional Center ("SCC") mail system.  *See* ECF No. 1., PageID ## 1, 15. *See Saffold v. Newland*, 250 F.3d 1262, 1268 (9th Cir. 2000), *vacated on other grounds*, 536 U.S. 214 (2002) (holding habeas petition is constructively filed on date prisoner presents petition to prison authorities for forwarding to the court); *Huizar v. Carey*, 273 F.3d 1220, 1222 (9th Cir. 2001).  The Petition raised two grounds for relief: (1) that Ortiz's extended term sentence was illegal because it was based on multiple episodes, rather than only one event; and (2) that Ortiz's trial attorney failed to submit a pretrial motion alleging an illegal search and seizure.  Ortiz asserted that his inability to read and write had prevented him from filing these claims earlier, but

said he had received assistance in filing the present
Petition.  ECF No. 1., PageID #13.

On June 6, 2016, the court dismissed the Petition
with leave to amend, because it challenged two separate
criminal convictions, failed to name a respondent,
failed to state a cognizable claim for habeas relief
under § 2254, and appeared time-barred on its face.
Order, ECF No. 5 ("Dismissal Order").  The court
carefully explained these issues in the Dismissal
Order.

On September 29, 2016, Ortiz filed the Amended
Petition.  Am. Pet., ECF No. 15.  It raises four
grounds for relief: (1) Ortiz's extended term sentences
are illegal under Hawaii Revised Statutes §§ 706-661,
706-662, and 706-664, as amended in 2007 (Ground One);
(2) Ortiz's extended sentences violate the Sixth
Amendment as determined under *Apprendi v. New Jersey*,
530 U.S. 466 (2000) (Ground Two); (3) an unidentified
conflict with his attorney resulted in ineffective
assistance of counsel (because the same counsel
represented Ortiz at trial and on appeal) (Ground

3

Three); and (4) Ortiz's extended term sentences
constitute cruel and unusual punishment under the
Eighth Amendment (Ground Four). Ortiz asserts that his
claims are exhausted, "current[,] and timely." *Id.*,
PageId #112. He does not address the court's
discussion regarding the inapplicability of *Apprendi v.*
*New Jersey*, 530 U.S. 466 (2000), to his 1989 conviction
and sentence, but asserts again that he is illiterate.

On October 17, 2016, the court issued a Preliminary
Order to Show Cause ("OSC") and Answer the Amended
Petition. OSC, ECF No. 16. The court directed (1)
Ortiz to explain, on or before November 28, 2016, why
the Amended Petition should not be dismissed as time-
barred, and (2) Respondent James Taylor, as Warden at
SCC, to file, on or before January 9, 2017, an Answer
or dispositive motion relating to the Amended Petition
*and* to any response from Ortiz.

On December 1, 2016, before the court had received
Ortiz's Response to the OSC, Respondent filed a
Preliminary Response to the Petition. ECF No. 18 (file
stamped 3:53 p.m.). Respondent asserted that Ortiz's

claims were time-barred and that Ortiz had failed to establish a basis for equitable tolling because he had failed to respond to the OSC.

Several minutes later, the court received Ortiz's Response to the OSC and inmate Mickey Maddox's Request to Enter Brief of Amicus Curiae. *See* ECF Nos. 19 (file stamped 4:00 p.m.) and 20. These documents were received in the same envelope; the envelope itself showed that the documents had been deposited in the SCC mail system on November 28, 2016. ECF No. 19-1. Maddox had apparently drafted and mailed the Response for Ortiz; Ortiz had not signed it. It is unclear from the Response whether Ortiz was aware of the mailing or had sought Maddox's assistance.

Maddox sought appointment as Ortiz's legal assistant on the ground that Ortiz had a third-grade reading level. Maddox said he had assisted Ortiz in filing his state post-conviction petition in 2013, although Maddox stated that he had not communicated with Ortiz "for a long time." *See* ECF No. 20 at PageID #179. The court denied Maddox's request because Maddox

is not an attorney and there was no indication in the
record that Ortiz had approved or sought his help, or
that Maddox shared Ortiz's best interests in this
matter.[1] *See* Order, ECF No. 21, PageID #191-93.

Because Ortiz had repeatedly alleged that he is
illiterate, and to ensure that Ortiz understood his
burden regarding the timeliness of his claims, the
court set hearings on February 6 and 13, 2017, to allow
Ortiz to explain orally how his alleged inability to
read and write had prevented him from timely filing a
federal habeas petition from 1988, when he received the
extended sentence he challenges, until he filed the
present action in 2016. *See* ECF Nos. 29, 31. The
court ordered Respondent to submit supplemental
briefing responding to Ortiz's claim that he had been
unable to pursue federal habeas relief earlier given

---

[1] At the hearing before this court on March 17, 2017, Ortiz
made it clear that he valued Maddox's help and had apparently
been communicating with Maddox when they were in the same housing
classification. This court does not, on this ground, alter its
earlier order. This court has some concern about whether an
order that a particular inmate may assist another inmate could
create unintended administrative or security issues. An inmate
might use such an order to insist to prison officials, for
example, on contact or housing arrangements that may or may not
be problematic for officials.

his alleged illiteracy.  This court also directed
Respondent to have all documents submitted to the court
read out loud to Ortiz before these hearings.

At the hearing on February 13, 2017, the court
directed Respondent to respond to Ortiz's additional
claim that his prolonged confinement in segregated
housing had kept him from filing a timely federal
habeas petition, and that his recent transfer to Hawaii
had impaired his ability to prove his entitlement to
equitable tolling or to adequately respond to the
court's questions.

On March 17, 2017, the court held a final hearing.
Ortiz orally explained his claim for tolling the
statute of limitation, answered the court's questions
concerning his past and present housing situations, and
detailed his ability to go to the prison law library,
access his legal materials, and obtain assistance
throughout his incarceration.  Ortiz then moved to
submit nearly three hundred pages of exhibits in
support of his claims for tolling the statute of
limitation.  The court accepted and filed Ortiz's

exhibits and took the matter under advisement. *See* ECF Nos. 39, 40.[2]

## B. Factual Background and Claims for Relief

On October 4, 1988, Ortiz was convicted of two counts of Robbery in the First Degree (Counts I, II), two counts of Kidnapping (Counts IV, V), Burglary in the First Degree (Count III), and Possession of a Firearm by a Person Convicted of Certain Crimes (Count VI), in Cr. No. 88-0459. *See* Prelim. Answer, ECF No. 18, PageID #133. The circuit court sentenced Ortiz to concurrent terms of life with the possibility of parole for Counts I, II, IV, and V, and twenty-year terms for Counts III and VI. *Id.* The Hawaii Supreme Court affirmed Ortiz's convictions on August 15, 1989. ECF No. 18-2.

Approximately eighteen years later, on or about November 20, 2007, Ortiz, proceeding pro se, filed his first state post-conviction petition pursuant to Rule

---

[2] The court ordered that Ortiz's exhibits be filed under seal pursuant to Local Rule LR83.12, out of concern at the time they were proffered and accepted at the hearing that they might contain confidential, restricted, or graphic information or images.

40 of the Hawaii Rules of Penal Procedure

("HRPP")("First Rule 40 Petition"). *Ortiz v. State*,

2009 WL 3063324, at *1 (Haw. App. Sept. 25, 2009); *see*

http://hoohiki.courts.hawaii.gov/#/case?caseId=1PR07100

0051 (last visited Mar. 14, 2017). Ortiz argued that

his extended sentences were illegal pursuant to

*Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its

application in Hawaii under *State v. Maugaotega*, 115

Haw. 432, 168 P.3d 562 (Haw. 2007).

On May 2, 2008, the circuit court denied Ortiz's

First Rule 40 Petition. The Hawaii Intermediate Court

of Appeals ("ICA") affirmed the circuit court on

September 25, 2009. *Ortiz*, 2009 WL 3063324, at *1.

The ICA held that neither *Apprendi* nor *Maugaotega* was

retroactive to cases on collateral review such as

Ortiz's. *Id*. The ICA further held that Ortiz's claim

that Hawaii's extended-term sentencing regime, which

was amended in 2007 to comply with *Apprendi* and

*Maugaotega*, rendered Ortiz's original sentence "void ab

initio," had been waived and, in any event, was

meritless. *Id.*

Four years later, on or about December 23, 2013, Ortiz filed another pro se Rule 40 Petition ("Second Rule 40 Petition"). *See Ortiz v. State*, 2016 WL 300214, at *1 (Haw. App. 2016); ECF No. 18-5. Ortiz asserted ten grounds for relief under the United States Constitution, the Hawaii constitution, and Hawaii state law. On August 21, 2014, the circuit court denied the Second Rule 40 Petition. *Id.* at *2.

On January 22, 2016, the ICA affirmed, holding that "the issues in the Second [Rule 40] Petition are waived and relief pursuant to HRPP Rule 40 is not available," because Ortiz had failed to prove extraordinary circumstances justifying his failure to raise the issues on direct appeal or in the First Rule 40 Petition. *Id.* The ICA held that, even if Ortiz's claims were not waived, they were without merit. *Id.* at *2-3. On April 6, 2016, the Hawaii Supreme Court denied Ortiz's certiorari request. *See Ortiz*, 2016 WL 2984230, at *1. One month later, Ortiz commenced the present action.

## II.  28 U.S.C. § 2244

The Antiterrorism and Effective Death Penalty Act ("AEDPA") went into effect on April 24, 1996.  AEDPA imposes a one-year statute of limitation on the filing of federal habeas corpus petitions.  28 U.S.C. § 2244(d).  Under § 2244(d)(1), the limitation period runs from the latest of:

> (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing such by State action;
>
> (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Section 2244(d)(2) tolls the limitation period while a "properly filed" state post-conviction petition

is pending. *See also Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (explaining that an application is "properly filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings).

A one-year grace period applies to state petitioners like Ortiz, whose convictions became final before AEDPA's enactment. For such petitioners, the statute of limitation did not begin to run until the day after AEDPA's enactment. *See Calderon v. United States Dist. Ct. (Beeler)*, 128 F.3d 1283, 1287 (9th Cir. 1997), *overruled in part on other grounds by Calderon v. United States Dist. Ct. (Kelly)*, 163 F.3d 530, 540 (9th Cir. 1998) (en banc). The limitation period expired one year later, on April 24, 1997. *Id.; Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001).

## III.  <u>DISCUSSION</u>

Ortiz's conviction in Cr. No. 88-0459 was final on direct review on December 1, 1989, ninety days after the Hawaii Supreme Court entered judgment on appeal

affirming his conviction and the time to seek
certiorari with the United States Supreme Court
expired. *See Clay v. United States*, 537 U.S. 522,
527–528 (2003) (holding direct review encompasses the
time for seeking certiorari by the Supreme Court); Sup.
Ct. Rule 13. Ortiz commenced this action more than
twenty-six years later, on May 18, 2016, the date he
signed his original Petition, and more than nineteen
years after the AEDPA grace period expired on April 24,
1997. Unless Ortiz is entitled to an alternative date
for commencement of the statute of limitation, or
equitable tolling, the Amended Petition is time-barred.

## A. No Tolling Under § 2244(d)(1)(B)

Ortiz argues that, because he had limited access to
his legal documents while he was confined in segregated
housing during his incarceration, he was subject to a
state-created impediment that prevented him from timely
filing a federal habeas petition. Under
§ 2244(d)(1)(B), the limitation period runs from the
date such an impediment is removed. Ortiz's references
to being in segregation or "in the hole" appear to be

13

references to being in a single-person cell, isolated from other prisoners and with little or no social interaction or library visits.

During the hearing on March 17, 2017, however, Ortiz stated that he was housed in *general population* while he was incarcerated in Hawaii between 1997 and 2004, when he was transferred to Oklahoma pursuant to Hawaii's contracts with private companies with prison facilities outside of Hawaii. He admitted that he was also housed in the general population during several periods thereafter while incarcerated in Oklahoma and then in Mississippi, until his transfer to Arizona in 2007.[3]

In response to the court's questions, Ortiz conceded that SCC Assistant Warden Ben Griego's declaration, that lists the dates when Ortiz was confined in segregation since his arrival at SCC on November 6, 2007, until his transfer to Hawaii on

---

[3] Ortiz said he was transferred to Mississippi in 2005 and to Arizona in 2006, but the record reflects that he was transferred to Mississippi on December 15, 2004, and to Arizona on November 6, 2007. *See* ECF No. 30-1 (showing "Facility Entry Dates"). This discrepancy does not affect this order.

February 1, 2017, was accurate. *See* Griego Dec., ECF

34-1. Griego's declaration shows that Ortiz was in

segregation for 383 days at SCC before he

constructively filed this action on May 18, 2016.[4] *Id.*

While at times Ortiz was housed in the High

Security facility at SCC, which Ortiz states is more

restrictive than general population but is not the same

as being segregated, he admitted that, when not in

segregation, he was able to go to the law library at

least once per week, regardless of whether he was in

High or Medium Security housing. Ortiz stated that,

while at SCC, he attended the law library most of the

time that he was allowed to.

Moreover, Ortiz does not dispute Griego's

statements that SCC permits all inmates "to access

their legal documents by submitting a request,"

regardless of whether they are housed in the general

---

[4] Ortiz was in segregation between 08/1/2008-09/26/2008 (56 days); 09/10/2009-03/01/2010 (172 days); 05/07/2010-07/12/2010 (66 days); 01/06/2011-03/10/2011 (63 days); 07/21/2012-08/16/2012 (26 days); 08/26/2015-10/22/2015 (57 days); 11/08/2016-12/15/2016 (37 days); 01/18/2017-02/01/2017 (14 days). Griego Dec., ECF No. 34-1. Thus, Ortiz was in segregation at SCC for 491 days during the nine years and ten months that he was in Arizona.

population or in segregation.  *Id.*, PageID #272.  Nor
does Ortiz dispute Griego's statement that SCC records
contain no grievances from Ortiz complaining that he
was denied access to his legal documents at any time
while he was incarcerated at SCC.  *Id.*

Ortiz was clearly able to file his First and Second
Rule 40 Petitions in the Hawaii state courts in 2007
and 2013, undercutting his assertion that he was
prevented through state action from timely filing a
federal petition before May 18, 2016.  *See Ramirez v.
Yates*, 571 F.3d 993, 1001 (9th Cir. 2009) (holding
delayed accrual under § 2244(d)(1)(B) is available only
if the impediment prevented petitioner "from presenting
his claims in any form, to any court") (emphases
omitted).

Ortiz has also filed three federal prisoner civil
rights actions between 1993 and 2012.  He filed *Ortiz
v. Waihee*, Civ. No. 93-00297 DAE-FIY (D. Haw. 1993),
followed by *Ortiz v. Gonzalez*, Civ. No. 07-00849 UNA
(D.D.C. 2007).  Then, in 2012, he filed *Ortiz v. Remus*,

Civ. No. 12-00073 DAE (D. Ariz. 2012) (transferred from
D. Haw., Civ. No. 12-00018 DAE).

Ortiz fails to explain why he was unable to file
the present § 2254 petition before May 18, 2016, during
the many periods since 1997 that he admits he was not
in segregation.  He also fails to explain how he was
able to file two post-conviction petitions in the state
court and three cases in the federal court, yet was
kept from filing a § 2254 petition during that same
time.  Under these circumstances, § 2244(d)(1)(B),
applicable to state-created impediments to filing,
provides no alternate date to commence the running of
the statute of limitation on Ortiz's claims in the
Amended Petition.

## B.   No Tolling Under § 2244(d)(1)(C)

Ortiz argues that his extended-term sentences are
illegal under *Apprendi* and its application to Hawaii in
*Maugaotega.*  He apparently seeks an alternate date for
commencing the statute of limitation applicable to his
§ 2254 petition based on a "newly recognized"
constitutional right made retroactive on collateral

17

review by the Supreme Court.  *See* 28 U.S.C.
§ 2244(d)(1)(C).

First, as this court, the ICA, and the Hawaii
Supreme Court have all explained to Ortiz, *Apprendi* is
not retroactively applicable to convictions that were
final before it was announced.  *See United States v.
Sanchez-Cervantes*, 282 F.3d 664, 671 (9th Cir. 2002),
*as amended* (Mar. 15, 2002) ("*Apprendi* does not apply
retroactively to cases on initial collateral review.");
*see also Ortiz*, 2009 Wl 3063324, at *1 ("Ortiz's
extended sentences are not illegal because *Maugaotega*
and *Apprendi* do not apply retroactively to his extended
sentences.") (citation omitted); *Ortiz*, 2016 WL 300214,
at *2 (explaining that "*Maugaotega* does not apply
retroactively to Ortiz's collateral attack of his
extended term sentences," under HRS § 706-662).
Neither *Apprendi* nor *Maugaotega* triggered a new date
for running of the statute of limitation under
§ 2244(d)(1)(C).

## C.    Section 2244(d)(1)(D)

Ortiz has been aware of the facts underlying his
claims of ineffective assistance of counsel and that
his extended term sentences allegedly violate the
Eighth Amendment since the date his conviction became
final on direct review in 1989.  He therefore is not
entitled to a delayed start of the limitation period
under § 2244(d)(1)(D), which provides for running the
limitation period from "the date on which the factual
predicate of the claim or claims presented could have
been discovered through the exercise of due diligence."

## D.  Section 2244(d)(2)

Finally, although the "time during which a properly
filed application for State post-conviction or other
collateral review with respect to the pertinent
judgment or claim is pending shall not be counted
toward any period of limitation," filing a post-
conviction petition *after* the statute of limitation has
expired does not reinitiate the limitation period under
§ 2244(d)(2).  *See Ferguson v. Palmateer*, 321 F.3d 820,

823 (9th Cir. 2003); *Jiminez v. Rice*, 276 F.3d 478, 482
(9th Cir. 2001) (same).

Ortiz filed his First Rule 40 Petition on November
20, 2007, more than ten years after the AEDPA grace
period expired on his claims and seven years after
*Apprendi* was decided. He then waited more than four
years after the First Rule 40 Petition was denied in
2009, before he filed his Second Rule 40 Petition.
Thus, neither Ortiz's First nor Second Rule 40 Petition
tolled or restarted the expired statute of limitation.

To be clear, even if *Apprendi* applied to Ortiz's
claims, and it does not, Ortiz failed to raise this
claim in this court for nearly sixteen years after
*Apprendi* was decided, although many other Hawaii state
prisoners raised *Apprendi* claims in the state and
federal courts during this time. And, even if Ortiz's
First Rule 40 Petition could have tolled the statute of
limitation between 2007 and 2009, Ortiz then waited
another six years before he finally raised this claim
in the federal court, choosing instead to pursue
further relief in the state courts in 2013. Section

2244(d)(1)(C) does not provide an alternate date to commence the statute of limitation on Ortiz's claims.

## E. Equitable Tolling

Federal habeas petitions are subject to equitable tolling of the one-year statute of limitation in certain instances. *Holland v. Florida*, 560 U.S. 631, 645 (2010). To be entitled to equitable tolling, a petitioner must show both "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented timely filing. *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). "The petitioner must show that 'the extraordinary circumstances were the cause of his untimeliness and that the extraordinary circumstances made it impossible to file a petition on time.'" *Porter v. Ollison*, 620 F.3d 952, 959 (9th Cir. 2010) (quoting *Ramirez v. Yates*, 571 F.3d 993, 997 (9th Cir. 2009)). "Indeed, 'the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow

the rule.'"  *Miranda v. Castro*, 292 F.3d 1063, 1066

(9th Cir. 2002) (citation omitted).

Equitable tolling is rarely justified, *Spitsyn v.

Moore*, 345 F.3d 796, 799 (9th Cir. 2003), because the

term "'extraordinary circumstances' necessarily

suggests the doctrine's rarity," and implies "that an

external force must cause the untimeliness, rather than

. . . merely 'oversight, miscalculation or negligence

on [the petitioner's] part, all of which would preclude

the application of equitable tolling.'"  *Waldron-Ramsey

v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009

(quoting *Harris v. Carter*, 515 F.3d 1051, 1054-55 (9th

Cir. 2008)).  The petitioner bears the burden of

demonstrating that AEDPA's limitation period should be

equitably tolled.  *See Pace*, 544 U.S. at 418.  Here,

Ortiz contends that he qualifies for equitable tolling

because he is unable to read or write at better than a

third-grade level.

### 1.  *The Parties' Arguments*

Respondent submits Ortiz's institutional education

records to rebut Ortiz's claim that he is illiterate.

These prison records reflect that Ortiz scored between a third- and eleventh-grade reading level on the Table of Adult Basic Education ("TABE"), between 2005 and 2006, while he was incarcerated at the Tallahatchie County Correctional Facility ("TCCF"). *See* Ex. 1, ECF No. 30-1. They also show that Ortiz attended educational classes, including "Basic Education L1 - Reading" classes, between 2002 and 2012.[5] *Id.*

Ortiz disputes that he ever reached an eleventh-grade reading level, although he does not contest that he attended classes. He says, however, that when his scores showed he read at an eleventh-grade level, he had been extensively tutored before the test and that he had simply answered questions posed to him orally. Ortiz concedes that he may have a third-grade reading level, and he clearly has at least a limited ability to read. Ortiz stated that he had attended the law library regularly throughout his incarceration. Ortiz also asserted that he had asked for and received

---

[5] Ortiz, however, did not complete any reading classes, having withdrawn due to transfer to another facility, disciplinary reasons, or for no given reason. *See* ECF No. 30-1.

assistance from other inmates to help him write letters, grievances, and file his claims over the years.  Ortiz said he paid for this assistance with food and commissary items.

Ortiz directed the court to the exhibits he submitted on March 17, 2017, which he said showed that he had received extensive help from others over the years, and that he had long challenged the conditions of his confinement and sought to challenge his conviction.  These exhibits span the period from 2001 to 2016, and consist primarily of Ortiz's letters to public and prison officials, grievances and their resolutions, and disciplinary reports.  These documents are at times written in Ortiz's handwriting, and at times written in others' handwriting.  Ortiz explained that when documents were written in his own handwriting, this was often because he had asked other inmates to write his claims down and he had then copied their words so the other inmates would not risk discipline for assisting him.

## 2. *Application*

First, as a general matter, neither the lack of legal sophistication, training, or assistance, nor ignorance of the law, constitutes an "extraordinary circumstance" entitling a petitioner to equitable tolling of the limitation period. *See, e.g.*, *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) (holding "pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling" of the AEDPA limitations period); *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999) (holding ignorance of limitation period did not warrant equitable tolling); *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir. 1998) (holding alleged lack of access to law library materials and resulting unawareness of limitation period did not warrant equitable tolling).

More particularly, illiteracy "does not automatically entitle an inmate to equitable tolling." *Vasquez v. Martel*, 2011 WL 285045, at *4 (E.D. Cal. Jan. 25, 2011); *see also Martinez v. Tampkins*, 2016 WL

7632798, at *5 (C.D. Cal. Oct. 25, 2016) (denying equitable tolling based on petitioner's English language limitations, illiteracy, and poor eyesight), *report and recommendation adopted*, 2017 WL 31525 (C.D. Cal. Jan. 3, 2017). "Low literacy levels, lack of legal knowledge, and need for some assistance to prepare a habeas petition are not extraordinary circumstances to warrant equitable tolling of an untimely habeas petition." *Baker v. Cal. Dep't of Corr.*, 484 Fed. App'x 130, 131 (9th Cir. 2012); *see also Green v. Small*, 2011 WL 91045, at *2 (C.D. Cal. Jan. 2, 2011) (denying equitable tolling based on petitioner's pro se status, lack of legal knowledge or sophistication, and illiteracy); *Stableford v. Martel*, 2010 WL 5392763, at *3 (C.D. Cal. Sept. 14, 2010) (rejecting argument that petitioner's illiteracy, dyslexia, lack of education, and limited access to the prison library were extraordinary circumstances).

Here, it is clear that Ortiz had the ability to file a federal petition for writ of habeas corpus at some point since AEDPA'S grace period began running on

April 24, 1996. This is particularly true in light of
Ortiz's ability (even if with help from others) to file
two Rule 40 Petitions containing the same claims that
he raises now, two federal civil rights actions,[6]
countless grievances, and numerous letters to senators,
governors, the federal public defender, and the
President of the United States since at least 2001.
*See* ECF Nos. 39-40. Ortiz does not explain how he
could have been diligently pursuing grievances, civil
rights claims, and state post-conviction relief
petitions, but was unable to send a letter or form
petition to this court until more than twenty-seven
years after his conviction became final.

The only plausible conclusion is that Ortiz did not
face extraordinary circumstances or diligently pursue
his rights. That is, Ortiz fails to show that
illiteracy, rather than a complete lack of diligence,
made it impossible for him to timely file his claims in
the federal court. *Cf. Yow Ming Yeh v. Martel*, 751

---

[6] Ortiz's first federal civil rights action was filed in
1993, and the court does not rely on it in this accounting.

F.3d 1075, 1078 (9th Cir. 2014) ("Since [petitioner] received assistance . . . during the relevant time period, his lack of [ability to read] could not have made it 'impossible' for him to meet the deadline."); *Navarro v. Clark*, 2011 WL 4101474, at *7 (C.D. Cal. July 28, 2011) (holding that petitioner who was able to fully exhaust his claims in state court "failed to show that his problems understanding English or Spanish prevented him from being able to formulate a timely federal petition.").

Moreover, at the hearing before this court on March 17, 2017, Ortiz orally confirmed that, from March 2011 to July 2012, he had been housed in the general population at SCC in Arizona. He said he was in K Unit and could go to the library once a week. Maddox, who was in L unit during this period, could go to the library twice a week. According to Ortiz, for this period of over a year, he could get help from Maddox. Even if this were the only time Ortiz could have submitted a § 2254 petition and even if other circumstances prevented him from filing this petition

earlier, his petition should have been submitted by July 2013. It was not submitted until May 2016.

Ortiz fails to carry his burden of showing that he diligently pursued his rights or that extraordinary circumstances beyond his control prevented him from filing his claims within the statute of limitation. The Petition is time-barred and is DISMISSED with prejudice pursuant to 28 U.S.C. § 2244(d).

## IV.   **CERTIFICATE OF APPEALABILITY**

Rule 11(a) of the Rules Governing Section 2254 Cases requires a district court to rule on whether a petitioner is entitled to a certificate of appealability in the same order in which the petition is denied. See also, Fed. R. App. P. 22(b). When a claim is dismissed on procedural grounds, the court must decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Ortiz fails to make a substantial showing that a reasonable jurist would find debatable

or wrong the dismissal of his Amended Petition as time-barred.  Any request for a certificate of appealability is denied.

## V.  <u>CONCLUSION</u>

The Amended Petition is DISMISSED with prejudice as time-barred pursuant to 28 U.S.C. § 2244(d).  A certificate of appealability is DENIED.  The Clerk of Court shall enter judgment and close the file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 24, 2017.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*Ortiz v. Taylon,* 1:16-00259 SOM/KSC; OSCs Hab 2016 Ortiz som 16-259 (POSC sol)